# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-mj-161** |
| **HERSHEL ANDREW GREEN III,** | |
| **Defendant.** | |

## MOTION FOR REVIEW AND APPEAL OF RELEASE ORDER

The United States of America, by and through its undersigned counsel, respectfully appeals, and seeks this Court's review of, the magistrate court's September 3, 2025, Order denying its motion for pretrial detention.  The magistrate court stayed its release order until September 5, 2025 at 12PM PST pending this appeal.

Defendant Hershel Green poses an unmitigable risk to community safety and should be detained pending trial.  During the investigation of a Washington, D.C. man ("SUBJECT 1") for receipt or distribution of child sexual abuse material ("CSAM"), law enforcement discovered conversations between SUBJECT 1 and Green in which they exchanged CSAM.  After law enforcement seized SUBJECT 1's phone, they continued the conversation with Green, from SUBJECT 1's Signal account, during which time Green sent additional videos of CSAM.  On August 22, 2025, Green was charged in a Criminal Complaint with Distribution/Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).

The government sought pretrial detention of the defendant pursuant to 18 U.S.C. §§ 3142(e)(3)(E) (rebuttable presumption in favor of detention), and 3142(f)(1)(A) (crime of violence) because there is no condition or combination of conditions of release that will reasonably assure the safety of any person or the community.  The magistrate court held detention hearings on August 27,

2025 and September 3, 2025. The court ordered the defendant released but granted the government's oral motion for a stay pending appeal.

The magistrate court erred by not adequately considering the Section 3142(g) factors as they apply in this case, including the nature and circumstances of the charged child sexual exploitation offense and the nature and seriousness of the danger to any person or the community. Notably, the magistrate court did not identify or discuss a third-party custodian, as it practice in this jurisdiction. Rather, the defendant was released on a $50,000 unsecured bond, placed by his mother, with certain conditions. For reasons that follow, this Court should reverse the magistrate court's release order and detain the defendant pending trial.

## BACKGROUND

### Investigation and Arrest of Subject 1

In July 2025, in search warrant case number 25-sw-185, United States Magistrate Judge Michael G. Harvey of the United States District Court for the District of Columbia issued a warrant authorizing the search of a residence in Washington, DC. The warrant concerned violations of Title 18 United States Code ("U.S.C.") §§ 2252(a)(2) and (b)(1) (receipt or distribution of a visual depiction of a minor engaged in sexually explicit conduct) committed by the occupant of the residence, SUBJECT 1. During the execution of the search warrant, which also authorized the search of digital devices contained within the residence, law enforcement discovered an unlocked laptop computer which contained several conversations between SUBJECT 1 and other individuals

regarding the distribution and/or receipt of child pornography. Some of these conversations utilized the Telegram Messenger application[1] and the Signal Messenger application ("Signal").[2]

That same day, SUBJECT 1 was arrested pursuant to an arrest warrant and criminal complaint. Among other digital devices, SUBJECT 1's cell phone and laptop computer were seized by the FBI, as authorized by the warrant. Through review of the digital devices, which remains ongoing, the FBI identified that SUBJECT 1 was part of a direct message string with a user known on Telegram as "fitddyG" and on Signal as "FitddyG,"[3] later identified as the defendant. As further described below, within the Signal chat, both SUBJECT 1 and the defendant, later identified as Hershel Green, shared CSAM, to include videos of adult males engaged in sexually explicit activity with prepubescent or younger male children. Specifically, using Signal, the defendant received at least 32 videos from SUBJECT 1 and sent at least 7 videos to SUBJECT 1 that depicted CSAM.

**Initial Communications Between SUBJECT 1 and the Defendant on Telegram**

From SUBJECT 1's cell phone, the FBI obtained Telegram messages between SUBJECT 1 and Telegram user "fitddyG," later identified as the defendant. These messages occurred in May 2025 and included, in relevant part:

| Sender | Message | Date and Time |
|--------|---------|---------------|
| SUBJECT 1 | I can forward stuff to you on signal if you don't want to join those groups. Like I said, I try not to have any porn sent here. | 5/28/2025 8:38 PM UTC[4] |
| FitddyG | fitddG.42 on signal. | 5/28/2025 8:40 PM UTC[5] |
| SUBJECT 1 | I'll add you soon | 5/28/2025 8:41 PM UTC |

---

[4] Universal Coordinated Time (UTC), also known as Zulu Time Zone (Z), is four hours ahead of Eastern Daylight Time (EDT).

[5] Multiple other messages occurred between the defendant's response to SUBJECT 1's statement

Later in the conversation, the defendant responded to a statement made by SUBJECT 1 as follows:

| Sender | Message | Date and Time |
|--------|---------|---------------|
| SUBJECT 1 | And interests evolve over time. I never thought I would like girls. Then in thought I would never like animals. And I thought boys with pubes were boring. | 5/28/2025 8:40 PM UTC |
| FitddyG | Ha ha yeah same, seeing that little pussy getting grinded on and penetrated and then this one like Scandinavian or German girl tied up giggling and begging for it changed that. Lol | 5/28/2025 8:43 PM UTC |
| SUBJECT 1 | lol. I how twisted you are. I thought we would have to start slowly. | 5/28/2025 8:45 PM UTC |
| SUBJECT 1 | I was wrong. Hahaha | 5/28/2025 8:45 PM UTC |
| SUBJECT 1 | Messaged you on signal. | 5/28/2025 8:47 PM UTC |

**Communications between SUBJECT 1 and the Defendant on Signal**

**a.  The Defendant's Receipt of CSAM from SUBJECT 1**

Beginning on May 28, 2025, SUBJECT 1 and Signal user "FitddyG," later identified as the defendant, had the following conversation on Signal:

| Sender | Message | Date |
|--------|---------|------|
| SUBJECT 1 | 👋<br><br>This is [SUBJECT 1's Telegram display name] from tele.[6] | 5/28/2025 |

---

about sharing "stuff" on Signal. For the purposes of this affidavit, those messages were not included.

[3] The def was known on Telegram as "fitddyG" and known on Signal as display name "FitddyG," with username "fitddG.42."

[4] Universal Coordinated Time (UTC), also known as Zulu Time Zone (Z), is four hours ahead of Eastern Daylight Time (EDT).

[5] Multiple other messages occurred between the defendant's response to SUBJECT 1's statement about sharing "stuff" on Signal. For the purposes of this affidavit, those messages were not included.

[6] Although SUBJECT 1's Telegram display name is known to law enforcement, it has been redacted here for privacy.

| SUBJECT 1 | (*SUBJECT 1 sent approximately 31 videos of CSAM at approximately 4:49 PM EST*) | 5/28/2025 4:49 PM EST |
|---|---|---|
| FitddyG | What's up perv | 5/28/2025 4:50 PM |
| SUBJECT 1 | I love being called that , in private of course. Being called pedo does it for me too | 5/28/2025 |
| SUBJECT 1 | I'm a sicko | 5/28/2025 |
| SUBJECT 1 | Or weirdo. | 5/28/2025 |
| SUBJECT 1 | I'm both | 5/28/2025 |
| SUBJECT 1 | (*SUBJECT 1 sent one video of CSAM at approximately 4:52 PM.*) | 5/28/2025 4:52 PM EST |
| FitddyG | Fuck those little penises ate so cute and turn me on. Looked through witch but damn, that dad loved filming with his boy at the beginning | 5/28/2025 4:53 PM EST |
| SUBJECT 1 | Little pp's are so cute. | 5/28/2025 4:54 PM EST |
| SUBJECT 1 | I want to put one and his little sack in mouth at the same time | 5/28/2025 4:54 PM EST |
| FitddyG | Love seeing a smooth little ass get eaten out too. Fuck. Now I'm really horny | 5/28/2025 4:54 PM EST |
| FitddyG | You played too or only online? | 5/28/2025 4:54 PM EST |
| *CONVERSATION CONTINUED* | | |
| SUBJECT 1 | Played with other pervs? | 5/28/2025 4:55 PM EST |
| FitddyG | With younger | 5/28/2025 4:58 PM EST |
| FitddyG | I've had a few 16 yr old virgins, but it was where AOC was that age | 5/28/2025 4:58 PM EST |
| SUBJECT 1 | I wish. Some buds and I talk about going to Mexico to rent boy's | |
| SUBJECT 1 | I took the virginity of a 16 y/o and had a fwb with a 17y/o in my 30s | 5/28/2025 5:00 PM EST |
| FitddyG | Hot!! Yeah O was about 28 or 29 at the time v | 5/28/2025 5:00 PM EST |
| FitddyG | Been a long while since I did that | 5/28/2025 5:00 PM EST |
| *CONVERSATION CONTINUED* | | |

All of the videos sent by SUBJECT 1 depicted what appeared to be child sexual abuse material of prepubescent or teenage males. A brief description of two of those videos is below:

- One video that depicted a nude prepubescent male laying on a bed with his genitals exposed. Approximately 16 seconds into the video, the prepubescent male can be seen laying on a bed and then turning from his back to his stomach. An unknown male's

hand can be seen manipulating the prepubescent male's buttocks and inserting his fingers into the boy's anus. The video was approximately 31 seconds in duration.

- Another video sent on May 28, 2025, depicted a nude prepubescent male laying on a bed with an unknown male inserting his finger into the prepubescent male's anus. The video was approximately 28 seconds in duration.

On July 14, 2025, an FBI Task Force Officer ("TFO") assigned to the Washington Field Office ("WFO") was acting in an online undercover ("UC") capacity as part of the FBI CEHTTF. As part of this role, the UC was lawfully monitoring a cellular phone turned over by SUBJECT 1 to identity to locate individuals involved in child sexual exploitation ("CSE").

**b. The Defendant's Distribution of CSAM to SUBJECT 1**

The UC reviewed the contents of SUBJECT 1's cellular phone and observed the direct messages between SUBJECT 1 and the defendant on Signal that are referenced above. Then, on or about July 22, 2025, in Washington, D.C., the FBI UC began exchanging direct messages with the defendant on Signal utilizing SUBJECT 1's Signal account.  The conversation included the following text:

| Sender | Message | Date |
|---|---|---|
| FBI UC | Hi! How have you been, miss you 😈 | 7/22/2025 2:13 PM EST |
| FitddyG | Well hello. Lol I kinda took a break. I tend to do that when I feel it consuming me. Lol | 7/22/2025 4:19 PM EST |
| FBI UC | Mmmmm been there. | 7/22/2025 5:42 PM EST |
| FBI UC | How's it been? | 7/22/2025 5:42 PM EST |
| FitddyG | All good, but chose to delete all the groups you shared. Sorry. Lol | 7/22/2025 6:11 PM EST |
| FitddyG | Have another sharing guy that keeps the itch taken care of. | 7/22/2025 6:11 PM EST |
| FBI UC | Yah? Anything good from him? | 7/22/2025 7:43 PM EST |
| FBI UC | You got a new daddy 😏😏😏 | 7/22/2025 7:43 PM EST |

6

| FitddyG | He's younger actually but yeah he sends some fun content. He he | 7/22/2025 9:54 PM EST |
|---------|-----------------------------------------------------------------|----------------------|
| FBI UC | Fuck yah. | 7/22/2025 10:02 PM EST |
| FBI UC | If you're feeling generous I'd love to see | 7/22/2025 10:02 PM EST |
| FBI UC | I also found someone fun….he's a dad 😈 | 7/22/2025 10:02 PM EST |
| FitddyG | Oh really? That plays with his kids? | 7/23/2025 1:15 AM EST |
| FitddyG | (FitddyG *sent seven videos that depicted CSAM.*) | 7/23/2025 1:15 AM EST |

All of the videos sent by FitddyG via Signal appeared to depict child sexual abuse material. Each of the seven videos displayed anal penetration of prepubescent or teenage males. The videos ranged between four minutes and 46 seconds in length to eight seconds in length. Multiple videos appeared to depict an unknown adult male inserting his penis into a prepubescent male's anus.

**B. Identification of the Defendant as Hershel Green**

On July 23, 2025, the FBI UC asked the defendant "Where are you located? We're in DC." The defendant responded, "CoHi" and then clarified, "Columbia heights In DC."

On July 24, 2025, as part of an ongoing conversation, the defendant sent a picture of themselves. This picture is depicted below:

**Photo Sent by FitddyG**



A check of law enforcement databases and open-source research identified a Facebook account with display name "Hershel Green," Facebook Uniform Resource Locator (URL) https://www.facebook.com/hagreen05. Though the Facebook account was largely set to private, the picture sent in the Signal chat appears to be the same individual shown on the Facebook account and the same individual depicted in the driver's license shown below. That photo was obtained from the Washington, DC Department of Motor Vehicles ("DMV"):

| Hagreen05 Facebook Photo | Defendant's driver's license photo |
|---|---|
|  |  |

According to Department of Motor Vehicle (DMV) records, the defendant's address is listed as XXXX Sherman Ave NW, Apt. X, Washington, DC 20010. This address is within the Columbia Heights neighborhood of Washington, DC.

Additional open-source research identified a LinkedIn account under the display name "Hershel Green." According to the LinkedIn account, the defendant works in the "Washington, DC - Baltimore Area."

On July 31, 2025, at approximately 10:29 a.m. EST, the FBI UC told the defendant, "I'm justin btw". The defendant responded, "Andy". According to DMV records, Andrew is Green's middle name.

On or about August 10, 2025, through August 11, 2025, the FBI UC exchanged the following

messages with the defendant via Signal:

| Sender | Message | Date and Time |
|--------|---------|---------------|
| DEFENDANT | What's up? | 08/10/2025 12:18 PM EST |
| FBI UC | Hey, not much. Missing a substantial amount of perv time for myself because of life<br>You? | 8/11/2025 10:44 AM EST |
| DEFENDANT | Ha ha I feel that. Gonna get busy for myself over the next few weeks | 8/11/2025 12:36 PM EST |
| FBI UC | Yah? Thats no fun. What do you have going on? | 8/11/2025 1:31 PM EST |
| DEFENDANT | Work trip to the Bay area next week. | 8/11/2025 1:56 PM EST |

Pursuant to administrative subpoenas served on August 13, 2025, on United Airlines and the

Airline Reporting Corporation, flight information associated to "Hershel Green" and "Hershel A

Green" was obtained. Analysis of the results revealed that, following the above-referenced

conversation regarding travel to the "Bay area," Hershel Andrew Green flew on a United Airlines

flight from Ronald Reagan Washington National Airport to San Francisco International Airport.[7]

According to those same subpoena returns, Green is scheduled to fly from San Francisco

International Airport to Dulles International Airport on a United Airlines flight departing on August

24, 2025, at approximately 4:45 PM and arriving in Dulles International Airport at approximately

12:45 AM.

On or about August 12, 2025, surveillance was conducted in the vicinity of XXXX Sherman

Ave NW, Washington, D.C. 20010. During the surveillance, at approximately 8:08 p.m., the

---

[7] The reporting party was unable to provide any further identifying information for the flight beyond the following: Date of Issuance        Ticket Number, Passenger Name, Passenger Name Record, Segment, Date of Departure, Time of Departure, Operating Airline, Flight Number, Origin Airport Code, Destination Airport Code, Plating Airline Code, Form of Payment, Travel Agency Code, Void Status, and Transaction Amount.

defendant was observed entering the residence. This is the same residence indicated on the defendant's driver's license and is located in Columbia Heights.

## PROCEDURAL HISTORY

The defendant was arrested on August 24, 2025 in San Francisco, California, and made his initial appearance before the magistrate court in the Northern District of California on August 25, 2025 in case number 25-mj-71026.  On the government's motion, the defendant was held pending a detention hearing scheduled for August 28, 2025.  The court held an additional hearing on September 3, 2025.  On that date, the court released the defendant on a $50,000 unsecured bond.  The defendant's mother, Dorothy Ann Green, is listed as the surety on the Order Setting Conditions of Release and Appearance Bond ("Order"). See Exhibit 1.  Ms. Green lists her home address as Saluda, Virginia, which is approximately two hours south of Washington, DC.  Ms. Green is not listed as the "custodian" on the Order, and the option of "Defendant must remain in the custody of custodian [BLANK] at [BLANK]…" is unchecked.[8]

On September 3, 2025, the magistrate court agreed to stay its release order until Friday, September 5, 2025 at 12PM PST.  The government now respectfully submits this Motion for Review.

## LEGAL STANDARD

Title 18, United States Code, Section 3145(a) provides:

(a) **Review of a release order** - If a person is ordered released by a magistrate, . . .

(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

---

[8] The following special condition is listed: "Defendant may only possess one internet-capable personal device (Android only), which will be subject to internet monitoring by Pretrial Services." According to Pretrial Services in the Northern District of California, this refers to Pretrial providing a phone to a defendant with monitoring software.  As this Court is likely aware, Pretrial Services in the District of Columbia does not have such capabilities.

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the magistrate court's denial of pretrial detention. Although the D.C. Circuit "ha[s] not squarely decided the issue," *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021), every other circuit to have analyzed the issue has concluded the standard is *de novo*. *See United States v. Blackson*, No. 23-CR-25, 2023 WL 1778194, at *5 & n.2 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (citing decisions from the First, Second, Third, Fourth, Fifth, Eighth, Ninth, and Tenth Circuits that stand for this proposition).

In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not raised previously. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community," the Court shall order the defendant held pending trial. 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). As a threshold matter, the government must demonstrate by a preponderance of the evidence that a defendant is a flight risk, *see United States v. Anderson*, 177 F. Supp. 3d 458, 466 (D.D.C. 2016) (citing *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996)), and by clear and convincing evidence that he is a danger to the community, *see* 18 U.S.C. § 3142(f).

In determining whether any condition or combinations of conditions will assure the safety of

the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

Here, Congress has specified that for an offense involving a minor victim under Section 2423, "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E). This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"). But even if the defense produces credible evidence, the presumption retains evidentiary weight and is considered by the Court among the Section 3142(g) factors. *See, e.g.*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.' . . . The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001))); *United States v. Ali*, 793 F. Supp. 2d 386, 388 n. 2 (D.D.C. 2011) ("[C]ircuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence.").

In making this determination, the "rules concerning the admissibility of evidence in criminal

trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

## ARGUMENT

For reasons that follow, the defendant poses an unmitigable risk to community safety. Because there are no conditions of release adequate to reasonably assure community safety, this Court should reverse the magistrate court's release order and detain the defendant pending trial.

### I.  The Statutory Factors All Weigh Heavily in Favor of Detention.

#### A.  Nature and Circumstances of the Charged Offense

The nature and circumstances of the charged offense weigh heavily in favor of detention. The Defendant's alleged conduct in this case is extremely harmful and dangerous to the community, sexual exploitation of a vulnerable minor victims. "Child pornography depicts pictorial evidence of physical sex abuse against, and exploitation of children and the production and distribution of such contraband carries a multitude of harms." *United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *6 (D.D.C. May 8, 2019) (Howell, C.J.) (reversing magistrate court's release order); *United States v. Nickelson*, No. 18-MJ-102 (GMH), 2018 WL 4964506 (D.D.C. Oct. 15, 2018) (Howell, C.J.(same); *United States v. Blanchard*, No. 18-MJ-101 (GMH), 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018) (Howell, C.J.) (same). Children captured in images and videos depicting their sexual abuse are significantly harmed at the time that the images and videos are created, and they are

re-victimized and re-traumatized every time an individual, such as the Defendant, views these images for his own sexual gratification and for the sexual gratification of others. *See Galarza*, 2019 WL 2028710, at *6.

The defendant's conduct in this case was extremely serious. The evidence here shows that Mr. Green communicated with Subject 1 concerning their sexual interest in children and exchanged CSAM. Mr. Green also discussed having sexual contact with minors offline, stating in response to a question, "with younger," and "I've had a few 16 yr old virgins, but it was where AOC [age of consent] was that age," when he was "28 or 29." Further, Mr. Green told the UC that he had at least one other individual who sent him CSAM "that keeps the itch taken care of."

Here, the charged offense both **(i)** is a crime of violence that serves as the basis for the statutory presumption of dangerousness and **(ii)** involves a minor victim. The Court is required to consider both of these factors in assessing the nature and circumstances of the offense. *See* 18 U.S.C. § 3142(g)(1) ("The judicial officer shall . . . take into account the available information concerning— the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim . . . ."); *Breeden*, 2015 WL 13310427, at *7 ("Congress specifically directed courts to consider whether a defendant is charged with a 'crime of violence' when assessing the nature and circumstances of the offense factor, and it designated a violation of section 2423(b) to be a crime of violence."); *accord United States v. Johnston*, No. 17-MJ-46, 2017 WL 4326390, at *4 (D.D.C. Sept. 28, 2017) (Howell, C.J.) (noting that a violation of Section 2423(b) "is a serious crime" subject to a rebuttable presumption of detention); *United States v. Beauchamp-Perez*, 822 F. Supp. 2d 7, 10 (D.D.C. 2011) ("With respect to the nature and circumstances of the offense, the charged offense is serious and involved traveling with intent to have sex with a twelve year-old minor victim. The Court finds that this factor supports detaining the defendant; indeed, it is the basis for the presumption in favor of detention.") (Bates, J.).

The seriousness of the charged offense is also reflected by Congress's judgment that those charged with producing child pornography should be presumed detained pending trial, *see* 18 U.S.C.§ 3142(e)(3)(E) and are subject to a fifteen-year mandatory minimum term of imprisonment upon conviction.  *See* 18 U.S.C. § 2251(a)(1).  Accordingly, the nature and circumstances of the defendant's offense weigh heavily in favor of detention.

### B. <u>The Weight of the Evidence Against the Defendant</u>

The second factor to be considered, the weight of the evidence, also weighs heavily in favor of detention.  The evidence against the defendant is strong.  Here, the evidence consists of conversations in which the defendant sends CSAM.  The identity of the defendant as the sender of the messages is strong—the defendant sent a photograph of himself to the UC and stated he lived in Columbia Heights, Washington, D.C.  The photograph sent by the defendant is consistent with his driver's license photograph.  The defendant's residence is also in Columbia Heights.  Moreover, the defendant stated that his name was Andy, which is consistent with his middle name, Andrew.  Finally, the defendant told the undercover agent that he was traveling to the "Bay area" for work shortly before traveling to San Francisco.  Each of these pieces of evidence taken together establish the defendant's identity as the perpetrator of this offense.

While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of Section 3142 and decisions analyzing this factor, then–Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."  No. 23-CR-25 (BAH), 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023) (Howell, C.J.).  Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."  *Id.* at *10.  In an unpublished opinion, the D.C. Circuit affirmed then–Chief Judge Howell's decision.

*United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  The Second

Circuit reached the same decision after a thorough and careful analysis of the issue.  *United States*

*v. Zhe Zhang*, 55 F.4th 141, 149–150 (2d Cir. 2022).  This Court should follow *Blackson* and

*Zhang*; this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and

important to the government's case in chief, that may increase the risk that defendant will flee to

avoid future court proceedings and may indicate that the defendant is a present danger to himself

or the community if the government's allegations later prove to be true."  *Blackson*, 2023 WL

1778194, at *10.  This is such a case, and the Defendant should be detained pending trial.

## C.  <u>The History and Characteristics of the Defendant</u>

Although the defendant does not have any criminal history, that is evidence of his efforts to

hide his criminal conduct from law enforcement.  The defendant's actions and statements in this case

indicate not only an interest in online child sexual abuse material but in hands on abuse of children.

Additionally, if the defendant was released in this matter, the release plan must necessarily include

a viable third-party custodian who is able to ensure he does not have access to electronic devices.

The defendant has significant technical expertise and was previously employed as a senior

aeronautics technologist.  Therefore, it would be extremely challenging for a third-party custodian

to ensure that he did not have access to devices or the internet. If the defendant is proposing that Ms.

Green—or someone else—act as a third-party custodian, the government has no information as to

whether she possesses the technical knowledge to ensure he does not have access to devices or the

internet.  This factor weighs in favor of detention.

## D.  <u>The Nature and Seriousness of the Danger to any Person or the Community</u>

The facts and evidence in this case establish that the defendant poses a grave danger to the

community.   As discussed above, the production and receipt of child pornography results in severe

mental, emotional, and physical trauma to the minors who are victimized by offenders such as the defendant, who seek to achieve sexual gratification by sexually exploiting these children. It is precisely "[t]hese significant harms and dangers [that] animated the Congress to create the statutory presumption of detention in these cases." *Galarza*, 2019 WL 2028710, at *7; *Nickelson*, 2018 WL 4964506, at *5 (noting also Congress's creation of significant statutory mandatory minimum penalties); *Blanchard*, 2018 WL 4964505, at *4 (same). The totality of his conduct demonstrates that he poses an unmitigable danger to the community. There is no condition or combination of conditions that could reasonably assure community safety were the defendant to be released. This Court should order that he remain detained pending trial.

Although the defendant appears to have minimal criminal history, the absence of prior criminal history is not sufficient to rebut the statutory presumption of dangerousness on the facts of this case. *See, e.g. Breeden*, 2015 WL 13310427, at *7 ("But the inferences the defendant is asking the Court to draw do not go far enough. The Court is not certain that a lack of *more* incriminating evidence constitutes 'evidence' that rebuts the presumption arising from the undisputed facts of the case." (emphasis in original)); *Pope v. United States*, 739 A.2d 819, 826 (D.C. 1999) (explaining that, under the D.C. Code's rebuttable presumption, if a court makes the requisite finding that a defendant committed certain crimes, then the "defendant is presumed to be dangerous (and subject to preventive detention) even if his prior record is clean and if no other showing of dangerousness is made").

Accordingly, this factor also weighs strongly in favor of detention.

## II.    The Magistrate Court's Release Order Should be Reversed.

The magistrate court's release order should be reversed. Although a third-party custodian is not appropriate in this case, the magistrate court did not even include a custodian in its release plan. Ms. Green is listed only as a surety, not as a custodian. To allow the defendant to be reintroduced to

the community with no oversight whatsoever is a stark danger to the community.  As this Court knows, D.C. Pretrial Services cannot conduct home visits or phone/computer monitoring.  Thus, the magistrate court's release order releases the defendant to the community with no way of ensuring that the defendant abides by conditions, and, most importantly, that he stays off of the Internet and away from children.

As mentioned above, a third-party custodian was not discussed in this case.  Even if the defendant had proposed a third-party custodian, however, one would not be appropriate in this case.  In *United States v. Hoppe*, No. 23-CR-102, the defendant traveled to a hotel in Virginia intending to rape an eight-year-old girl.  The defendant sought to be released to home incarceration under the custodianship of her aunt.  Judge Contreras rejected that proposal as wholly inadequate to assure community safety given the nature of the allegations:

> The Court is not convinced that these proposed conditions would reasonably mitigate the risk Defendant's release would pose to the community.  First, it is generally true that, in cases "involving illicit online conduct involving a minor, a defendant cannot establish that an appropriate third-party custodian exists, since, given the ubiquity of internet-capable devices, ensuring against continuing illegal conduct on release often presents insurmountable challenges."  *United States v. Dhavale*, No. 19-mj-92, 2020 WL 1935544, at *5 (D.D.C. Apr. 21, 2020).  That principle applies foursquare here.  Defendant's papers make clear that her proposed third-party custodian has multiple internet-capable devices in her home, including a computer, an iPad, and a cellphone.  *See* Def.'s Suppl. Mot. at 3.  Defendant asserts that these devices would be difficult to access for multiple reasons.  *See id.* But Defendant does not assert that her aunt would be able to monitor her at all hours of the day.  Nor is the Court persuaded that Defendant would be unable to access any other internet-capable devices.  Defendant "needs only a hand-held device to access and/or distribute child pornography."  *See Galarza*, 2019 WL 2028710, at *6.  And because Defendant's aunt cannot provide round-the-clock monitoring, "the absence of such small devices in [Defendant's aunt's] residence cannot be meaningfully verified on a continuous basis."  *See id.*

*United States v. Hoppe*, No. 23-CR-102, 2024 WL 1990452, at *6 (D.D.C. May 6, 2024) (Contreras, J.).  The same concerns apply here.  Even if a magistrate court ordered that the defendant could not have any internet-capable devices, there is no plan in place for ensuring that he would follow this.  A third-party custodian could not "provide round-the-clock monitoring," and "the absence of such small

devices in [the] residence cannot be meaningfully verified on a continuous basis."

Indeed, district courts in this jurisdiction have recognized the challenge faced by third-party custodians—who are essentially being asked to act as correctional officers 24 hours a day for someone about whom they care deeply—and have repeatedly rejected such arrangements as inadequate to reasonably assure community safety. *See, e.g.*, July 24, 2023, Hr'g Tr. 24:14–25, ECF No. 20, *United States v. Gorham*, 23-CR-206 (D.D.C. Aug. 17, 2023) (Berman Jackson, J.) ("I'm concerned that she doesn't have the distance or independence to be his supervisor, and essentially his jailer, after being under U.S. Probation Office supervision while married to her wasn't enough to do the trick. And I'm not sure it's appropriate to put her in the position of searching his car every day."); Order at 9, ECF No. 54, *United States v. Cunningham*, 23-CR-7 (D.D.C. Mar. 13, 2023) (Cobb, J.) (same) ("[A] third-party custodian, no matter how competent or dedicated, cannot stand in the shoes of the defendant. Nor should a third-party custodian be cast in the role of jailer. To do so is neither realistic nor fair to the custodian. . . . [The defendant's] custodians cannot supervise his behavior on a 24/7 basis."); Order at 14, ECF No. 18, *United States v. Wright*, 22-CR-410 (D.D.C. Dec. 23, 2022) (Cooper, J.) (same) ("But family members are not correctional officers. Nor should they be expected to play that role"); Order, ECF No. 14, *United States v. Joyner*, 22-CR-252 (D.D.C. Aug. 3, 2022) (McFadden, J.) (same); Order, ECF No. 55, *United States v. Handy*, 22-CR-164 (D.D.C. June 21, 2022) (Walton, J). (same), *aff'd*, Case No. 22-3045 (D.C. Cir.).

And in *Blackson*, then–Chief Judge Howell reversed the magistrate court's release order and discussed the inadequacy of a similar third-party custodian arrangement:

> The proposed conditions impose responsibilities similar to those of full-time and professional employees at detention facilities, but without the benefit of shifts or breaks in service as custodian. Defendant's mother's capability to uphold those conditions long-term is questionable. Certainly, the Magistrate Judge attempted to assuage skepticism about the long-term ability of defendant's mother to fulfill all the proposed conditions, and defendant's mother obliged by affirming her willingness and ability to do so. Regardless of whether defendant's mother is a pillar of the

19

community with ties to local government and law enforcement, she was and has been part of defendant's support community that unsuccessfully kept him out of the court system following his release only last May.  She is currently permitted to work from home for "maybe two or three months for now" and after that, she will have to "see" about her ability to work remotely every day.  Defendant argued that other individuals were approved as third-party custodians to cover gaps in his mother's availability, but that risks inconsistency in the conditions of home incarceration that, as of now, are completely placed on his mother.  To be clear, a benefit of professional detention facilities is the consistency in insuring detention conditions.  Defendant's ability to obtain a fully loaded and unregistered gun while on probation, despite the family support he enjoys, underscores that the best intentions and most valiant efforts of defendant's mother to fulfill all the proposed conditions provide no guarantee these conditions will be maintained to the letter for the duration, possibly many months, of defendant's pretrial proceedings.

*Blackson*, 2023 WL 1778194, at *12 (record citations omitted).

Here, no third-party custodian was suggested, so it is not possible to know if anyone could serve as a viable or plausible option.  However, any proposed custodian would have an obvious personal interest in ensuring that the defendant remains on release.  He or she would be required to essentially live under house arrest, unless another approved party could take over custody of the defendant.  This arrangement places an unrealistic burden on any proposed custodian and unacceptably "risks inconsistency in the conditions of home incarceration."  *Blackson*, 2023 WL 1778194, at *12.

## **CONCLUSION**

For the foregoing reasons, the magistrate court erred in setting conditions of release.  Nothing short of detention is adequate to protect the community in this case.  The government respectfully

requests that this Court reverse the magistrate court's release order and detain the defendant pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

Dated: September 4, 2025             By:    */s/ Rachel Bohlen*
                                          Rachel Bohlen
                                          D.C. Bar No. 1010981
                                          Assistant United States Attorney
                                          United States Attorney's Office
                                          for the District of Columbia
                                          601 D Street NW
                                          Washington, DC 20530
                                          (202) 809-3575
                                          rachel.bohlen@usdoj.gov

# EXHIBIT 1

GPO U.S. GOVERNMENT PUBLISHING OFFICE: 2023-771-710

| | | DATE | CASE NUMBER |
|---|---|---|---|
| UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA | ORDER SETTING CONDITIONS OF RELEASE AND APPEARANCE BOND | Sep 3, 2025 | 25-mj-71026-MAG |

| NAME OF DEFENDANT | ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| Hershel Andrew Green III | 3313 Sherman Ave NW Unit #1 Washington DC 757218 3247 | |

| NAME OF ☒SURETY ☐CO-SIGNER ☐CUSTODIAN | ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| Dorothy Ann Green | 11313 Farn Road, Saluda, Virginia 23149 | 713 336 0493 |

| NAME OF ☐SURETY ☐CO-SIGNER ☐CUSTODIAN | ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| | | |

| AMOUNT OF BOND | ☒UNSECURED ☐SECURED BY | ☐DEPOSIT RECEIVED FROM: | ☐OTHER SECURITY: | TIME/DATE OF NEXT APPEARANCE | COURTROOM/JUDGE |
|---|---|---|---|---|---|
| ☐PERSONAL RECOGNIZANCE $50,000 | $ | | TO BE POSTED BY: | | |

## CONDITIONS OF RELEASE AND APPEARANCE

Defendant is subject to each condition checked:

☒ Defendant must appear at all proceedings as ordered by the Court and must surrender for service of any sentence imposed.
☒ Defendant must not commit any federal, state, or local crime.
☒ Defendant must not harass, threaten, intimidate, injure, tamper with, or retaliate against any witness, victim, informant, juror, or officer of the Court, or obstruct any criminal investigation. See 18 U.S.C. §§ 1503, 1510, 1512, and 1513, summarized in attachment.
☒ Defendant must submit to supervision by Pretrial Services and must report immediately upon release and thereafter as directed to Pretrial Services.
☒ Defendant must surrender any passports or other travel documents to Pretrial Services by _9/8/25_ and must not apply for other passports or travel documents.
☒ Defendant must not possess any firearm, destructive device, or other dangerous weapon.
☒ Defendant must not use alcohol ☒to excess ☐at all, and must not use or possess any narcotic or other controlled substance without a legal prescription.
☒ Defendant must continue or actively seek employment, or continue or start an education program approved by Pretrial Services.
☐ Defendant must submit to drug and/or alcohol testing as directed by Pretrial Services.
☐ Defendant must participate in substance abuse treatment, on an outpatient or residential basis, as directed by Pretrial Services.
☒ Defendant must participate in mental health treatment as directed by Pretrial Services.
☐ Defendant must have no contact, directly or indirectly, with any co-defendant outside of the presence of counsel.
☒ Defendant must not change residence or telephone number without prior approval of Pretrial Services.
☐ Defendant must remain in the custody of custodian _____ at _____. The custodian must supervise defendant and report any violation of a release condition to Pretrial Services. A custodian who fails do so may be prosecuted for contempt.
☐ Defendant must reside in a halfway house at _____ and must comply with all conditions of that facility.
☒ Defendant must comply with the following location restrictions:
  ☒[A] Defendant must not travel outside of: ☒the Northern District of California (see map on reverse side),☒other: the District of Washington D.C. Columbia
  ☐[B] Defendant must observe a curfew and remain at his/her residence every day from _____ to _____, except as directed by Pretrial Services.
  ☒[C] Defendant must remain at his/her residence at all times except for (indicate all that apply): employment, education, religious services, medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-approved obligations; or other activities approved in advance by ☒Pretrial Services, ☐the Court.
☒ Defendant must submit to location monitoring ☐by GPS, ☐by RF, ☒as directed by Pretrial Services to ensure compliance with:
  ☐ All court-ordered location restrictions.
  ☐ The following court-ordered location restrictions: _____
☒ The following conditions also apply:

Defendant may only possess one internet-capable personal device (Android only), which will be subject to internet monitoring by Pretrial Services. Defendant must have no contact with minors and any potential witness.

Defendant must contribute to the cost of services provided by Pretrial Services as directed by Pretrial Services.

## CONSEQUENCES OF DEFENDANT'S FAILURE TO OBEY CONDITIONS OF RELEASE AND APPEARANCE

If defendant does not obey these conditions of release and appearance, payment of the full amount of this bond will be due, and all cash or property posted to secure it will be forfeited. Judgment may be entered and executed against defendant and all sureties or co-signers jointly and severally. An arrest warrant for defendant shall issue immediately, and defendant may be detained without bail for the rest of the proceedings. Defendant will be subject to consecutive sentences and fines for failure to appear and/or for committing an offense while on release. See 18 U.S.C. §§ 3146 and 3147, summarized in attachment.

We, the undersigned, have read and understand the terms of this bond and acknowledge that we are bound by it until duly exonerated.

| SIGNATURE OF DEFENDANT | SIGNATURE OF SURETY/CO-SIGNER/CUSTODIAN |
|---|---|
| SIGNATURE OF SURETY/CO-SIGNER/CUSTODIAN | SIGNATURE OF SURETY/CO-SIGNER/CUSTODIAN |
| THIS ORDER AUTHORIZES U.S. MARSHAL TO RELEASE DEFENDANT FROM CUSTODY | SIGNATURE OF MAGISTRATE JUDGE / DATE Sep 3, 2025 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. CR    25-mj-71026-MAG |
| Plaintiff, | ) | |
| | ) | CONSENT TO ENTRY OF TRAVEL |
| vs. | ) | AND OTHER ORDERS REGARDING |
| | ) | CONDITIONS OF RELEASE |
| Hershel Andrew Green III | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| _____ | ) | |

    As a third-party surety on the bail bond in this case I consent to all future orders of the Court permitting, for whatever reason, the Defendant to travel outside of the Northern District of California, or to modify, supplement, or delete Defendant's conditions of release as the Court deems necessary. I further consent to the entry of such orders without further notice to me.

    I understand that if the Defendant, while out of this district with the permission of the Court, flees or otherwise commits a breach of the bail bond conditions, I will be subject to a civil judgement for the amount of the bail, and all property I have posted with the Court to secure the bail will be ordered forfeited to the United States.

DATED: ___9/3/25___

DATED: _____

DATED: _____

DATED: _____

☐ SURETY  ☐ CO-SIGNER  ☐ CUSTODIAN

☐ SURETY  ☐ CO-SIGNER  ☐ CUSTODIAN

☐ SURETY  ☐ CO-SIGNER  ☐ CUSTODIAN

☐ SURETY  ☐ CO-SIGNER  ☐ CUSTODIAN

# FEDERAL JUDICIAL DISTRICTS IN CALIFORNIA

OREGON

EASTERN
DISTRICT

NORTHERN
DISTRICT

NEVADA

PACIFIC OCEAN

CENTRAL DISTRICT

SOUTHERN DISTRICT

MEXICO

## FEDERAL PRETRIAL SERVICES
## NORTHERN DISTRICT

**U.S. Pretrial Services Agency**
**450 Golden Gate Ave., Room 18-5497**
**San Francisco, CA 94102**
**(415) 436-7500/436-7501**

**U.S. Pretrial Services Agency**
**280 S. First Street, Suite 1150**
**San Jose, CA 95113**
**(408) 535-5222/535-5229**

**U.S. Pretrial Services Agency**
**1301 Clay Street, Suite 100C**
**Oakland, CA 94612**
**(510) 637-3750/637-3751**

**U.S. Pretrial Services Agency**
**777 Sonoma Ave., Suite 323**
**Santa Rosa, CA 95404**
**(707) 575-3423**

**U.S. Pretrial Services Agency**
**3140 Boeing Ave.**
**McKinleyville, CA 95519**
**(707) 575-3423/(415)436-7501**

## § 1503. Influencing or injuring officer or juror generally.

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on the account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000, or imprisoned not more than five years, or both.

## § 1510. Obstruction of criminal investigations.

(a) Whoever willfully endeavors by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States to a criminal investigator shall be fined not more than $5,000, or imprisoned not more than five years, or both.

## § 1512. Tampering with a witness, victim, or an informant.

(a) Whoever knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person with intent to-

(1) influence the testimony of any person in an official proceeding;

(2) cause or induce any person to-

(A)  withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings; shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

(b) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from-

(1) attending or testifying in an official proceeding;

(2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

(3) arresting or seeking the arrest of another person in connection with a Federal offense; or

(4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceedings; or attempts to do so, shall be fined not more than $25,000 or imprisoned not more than one year, or both.

## § 1513. Retaliation against a witness, victim, or an informant.

(a) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person or threatens to do so, with intent to retaliate against any person for-

(1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding or

(2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceeding given by a person to a law enforcement officer, or attempts to do so shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

## § 3146. Penalty for failure to appear

(a) Offense-A person commits an offense, if after having been released pursuant to this chapter-

(1) he knowingly fails to appear before a court as required by the conditions of his release; or

(2) he knowingly fails to surrender for service of sentence pursuant to a court order.

(b) Grading-If the person was released-

(1) in connection with a charge of, or while awaiting sentence, surrender for service of sentence, or appeal or certiorari after conviction for-

(A)  an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, he shall be fined not more than $25,000 or imprisoned for not more than ten years, or both;

(B) an offense punishable by imprisonment for a term of five or more years, but less than fifteen years, he shall be fined not more than $10,000 or imprisoned for not more than five years, or both;

(C) any other felony, he shall be fined not more than $5,000 or imprisoned for more than two years, or both; or

(D) a misdemeanor, he shall be fined not more than $2,000 or imprisoned for not more than one year, or both; or

(2) for appearance as a material witness, he shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

A term of imprisonment imposed pursuant to this section shall be consecutive to the sentence of imprisonment for any other offense.

## § 3147. Penalty for an offense committed while on release.

A person convicted of an offense committed while released pursuant to this chapter shall be sentenced, in addition to the sentence prescribed for the offense to-

(1) a term of imprisonment of not less than two years and not more than ten years if the offense is a felony; or

(2) a term of imprisonment of not less than ninety days and not more than one year if the offense is a misdemeanor.

A term of imprisonment imposed pursuant to this section shall be consecutive to any other sentence of imprisonment.